IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| BARBARA BURGETT,<br><br>                    Plaintiff,<br><br>v.<br><br>DELTA AIRLINES INC.,<br><br>                    Defendant. | REPORT & RECOMMENDATION<br><br>Case No. 2:14-cv-00313<br><br>United States District Court Judge<br>Robert Shelby<br><br>Magistrate Judge Dustin Pead |

      This matter is before the court pursuant to a 28 U.S.C. § 636(b)(1)(B) referral from District Court Judge Robert Shelby (doc. 9). Currently pending is Defendant Delta Airlines Inc.'s ("Delta") motion to dismiss Plaintiff Barbara Burgett's ("Ms. Burgett") complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. 8).

      The court has carefully reviewed the memoranda submitted by the parties. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and concludes that oral argument would not be helpful or necessary. *See* DUCivR 7-1(f).

## BACKGROUND

      The following facts are taken from plaintiff's complaint and viewed in a light most favorable to Ms. Burgett. *Jordan-Arapahoe, LLP v. Bd. of County Comm'rs,* 633 F.3d 1022, 1025 (10th Cir. 2011) (when considering a motion to dismiss under rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] all well-pleaded facts as true and view[s] them in the light most favorable to the plaintiff"); *see also Ruiz v. McDonnell,* 299 F.3d 1173, 1181 (10th

Cir. 2002) (the court "must view all reasonable inferences in favor of the plaintiff, and the pleadings must be liberally construed") (citation omitted).

On May 6, 2014, Ms. Burgett filed her *pro se* complaint against Delta alleging failure to properly transport her shipment of live dogs.[1] The shipment, containing one French Bulldog and ten puppies of the same breed, flew as Delta cargo from Budapest, Hungary, on April 23, 2008, to Salt Lake City, Utah, on April 24, 2008, via John F. Kennedy airport in New York (doc. 5, ¶106).

Upon the dogs' arrival in Utah, Ms. Burgett was informed by Delta agents that her adult dog had died (doc. 5, ¶27). In response, Ms. Burgett "blacked out and fainted and fell to the ground" (doc. 5, ¶28). After she regained consciousness, Ms. Burgett proceeded to the cargo area where she observed her deceased adult dog and noticed that there was "no food or water dishes of any kind in his crate" (doc. 4, ¶¶28-30). As a qualified Veterinary Technician with "extensive knowledge and experience in veterinary care", Ms. Burgett determined that her puppies were in "critical physical condition", exhibiting "shallow labored breathing" and "diffuse swelling of their whole bodies" (doc. 5, ¶33, ¶39).

The following day, Ms. Burgett took her deceased dog for an autopsy at the Utah State Diagnostic Laboratory where it was determined that the animal had died from heatstroke and accompanying dehydration (doc. 5, ¶35). That same day, a veterinarian diagnosed the puppies with "dehydration with secondary pneumonia" and provided Ms. Burgett with IV bags and antibiotics to administer (doc. 5, ¶40). Approximately three months later, two of the remaining

---

[1] A review of Ms. Burgett's complaint reveals that it contains two sets of paragraphs numbered ¶¶45-56 (doc. 5, pgs. 15-18, and pgs. 18-20).

puppies died from congestive heart failure "that was caused by the heatstroke suffered on April 24, 2008 and eight puppies were left with varying degrees of permanent health problems" (doc. 5, ¶42).

On May 6, 2014, Ms. Burgett filed this action against Delta alleging claims for breach of contract, AA,[2] deceptive advertising and consumer sale practices, failure to disclose, breach of good faith and fair dealing and pain and suffering. On May 30, 2014, Delta filed its pending motion to dismiss Ms. Burgett's complaint for failure to state a claim upon which relief may be granted (doc. 8).[3]

## LEGAL STANDARD

Delta seeks dismissal of Ms. Burgett's complaint pursuant to rule 12(b)(6) of the federal rules of civil procedure for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[2]Ms. Burgett's second claim for relief alleges a cause of action entitled "AA". Ms. Burgett seeks to reserve the "right to amend this claim in the future" when she discovers the "correct legal term" for this claim (doc. 5, p. 24).

[3]On July 7, 2014, having received no timely opposition to Delta's motion to dismiss, the court issued an order to show cause requiring Ms. Burgett to file her opposition, if any, within fifteen (15) days (doc. 10). On July 21, 2014, the Court granted Ms. Burgett's motion for additional time within which to file her opposition (doc. 14). On September 24, 2014, Ms. Burgett filed her opposition (doc. 15), and Delta filed its reply on October 2, 2014 (doc. 16). Accordingly, all briefing related to the motion to dismiss has been completed and fully considered by the court.

inference that the defendant is liable for the misconduct alleged. *See Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009), 556 U.S. 662, 678 (quoting *Twombly,* 550 U.S. at 570 (2007)). When considering a motion to dismiss, a court may disregard conclusory allegations that lack supporting factual content, *see Erickson v. Pawnee Cnty. Bd. Of Cnty. Comm'rs.,* 263 F.3d 1151, 1154-55 (10th Cir. 2001), and need not "accept as true a legal conclusion couched as a factual allegation. . . ." *Iqbal*, 556 U.S. at 678 (2009).

The court notes that Ms. Burgett is proceeding *pro se* and accordingly applies a more lenient standard to its review of her pleadings. *See e.g., Ledbetter v. City of Topeka,* 318 F.3d 1183, 1187 (10th Cir. 2003) (citing *Hanies v. Kerner.* 404 U.S. 519, 520-21, (1972)); *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."). Despite the application of a more liberal standard, it is not the function of this court to assume the role of advocate for Ms. Burgett. *Hall* 935 F.2d at 1110 (10th Cir. 1991).

## ANALYSIS

Delta offers two main grounds in support of its motion for dismissal of Ms. Burgett's complaint: (I) the Montreal Convention; and, in the alternative, (II) federal and state statutory limitations periods.

I.      **The Montreal Convention**[4]

The Montreal Convention ("Convention") "governs the rights and liabilities of passengers and carriers in international air transportation." *Galbert v. W. Caribbean Airways,* 715 F.3d 1290, 1292 (11th Cir. 2013). The terms of the Convention apply to "all international transportation of persons, baggage or cargo" that "originates in the territory of one of the States Party to the Convention and terminates in that of another." *Polanksi v. KLM Royal Dutch Airlines*, 378 F. Supp. 2d 1222, 1227 (S. D. Cal. 2005), *citing Montreal Convention,* Art. 1; *see also Convention for the Unification of Certain Rules for International Carriage by Air*, May 28, 1999, S. Treat Doc. No. 106-45, Art. 1(1). The Convention is designed to promote uniformity and predictability with regard to "rules governing claims arising from international air transportation." *El Al Israel v. Tseng,* 525 U.S. 155, 169, 119 S. Ct. 662, 142 L. Ed. 2d 576 (1999).

As stated in her complaint, Ms. Burgett seeks compensation for damages to her shipment of dogs that she alleges occurred during their international carriage from Budapest, Hungary to

---

[4]The Montreal Convention, entered into force on November 4, 2003, replaced the Warsaw Convention as the treaty governing international air carrier liability. *Polanksi,* 378 F. Supp.2d at 1227 (S.D. Cal. 2005). The Convention "was the product of a United Nations effort to reform the Warsaw Convention so as to harmonize the hodgepodge of supplementary amendments and intercarrier agreements of which the Warsaw Convention system of liability consists." *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co.,* 522 F.3d 776, 680 (7th Cir. 2008 ) (internal quotation marks and citation omitted). Since its inception, courts have used cases interpreting the Warsaw convention in order to interpret similar provisions under the Montreal Convention. *See e.g., Baah v. Virgin Atlantic Airways Ltd.,* 473 F. Supp.2d 591, 595-596 (S.D.N.Y. 2007); *Paradis v. Ghana Airways Ltd*., 348 F. Supp.2d 106, 110 n.4-5 (S.D.N.Y. 2006), aff'd, 194 Fed. Appx. 5 (2nd Cir. 2006). Accordingly, in this decision, the court relies upon cases brought under both the Warsaw and Montreal Conventions.

Salt Lake City, Utah.  Under the Convention, "international carriage" is defined as a shipment in which the place of departure and destination "are situated. . . within the territories of two States Parties."  *Montreal Convention,* Art. 1(1), 1(2).  Hungary and the United States, as the starting and ending point for Ms. Burgett's shipment of dogs, are both signatories to the Convention, and therefore the Convention governs Ms. Burgett's claims.[5]

### 1. The Convention Has Pre-Emptive Effect

Article 29 of the Montreal Convention provides:

> In the carriage of passengers, baggage and cargo, any action for damages, however, founded, whether under this Convention or in contract or in tort or otherwise can only be brought subject to the conditions and such limits of liability as are set out in this Convention without prejudice to the question as to who are the persons who have the right to bring suit and what are their respective rights.  In any such action, punitive, exculpatory or any other non-compensatory damage shall not be recoverable.

*Montreal Convention,* Art. 29.  Courts interpret Article 29 as giving preemptive effect over claims within the Convention's scope "whether based on federal or state law." *Weiss v. El Al Israel Airlines, Ltd.,* 433 F. Supp 2d 361, 365 (S.D.N.Y. 2006); *see e.g., Tseng*, 525 U.S. 155 at 172 (1999) ("preemptive effect on local law extends no further than the Convention's own substantive scope") (internal citations and quotation marks omitted); *Bridgeman v. United Cont'l. Holdings, Inc.,* 552 Fed. Appx. 294, 296 (5th Cir. 2013) (unpublished); *King v. Am. Airlines,* 284 F.3d 352, 356-57 (2nd Cir. 2002); *Husmann v. Trans World Airlines, Inc.,* 169 F.3d 1151, 1153 (8th Cir. 1999) (Warsaw Convention preempts state tort law claims for personal injuries occurring in connection with international flights); *Boehringer-Mannheim Diagnostics,*

---

[5]*See* list of parties to Convention:  www.icao.int/Secretariat/Legal/Lists/Current lists of parties/AllItems.aspx. (last visited February, 8, 2015).

*Inc. v. Pan American World Airways, Inc.,* 737 F.2d 456 (5th Cir. 1984), *cert den.* 469 U.S. 1186, 83 L. Ed. 2d 959, 105 S. Ct. 951 (1985) (Warsaw Convention provides exclusive remedy, preempting other state or federal law claims); *Paradis v. Ghana Airways Ltd.,* 348 F. Supp.2d 106, 111 (S.D.N.Y. 2004) (Convention "preempt[s] all state law claims within [its] scope.").

### 2. Ms. Burgett's Claims Fall Within The Scope Of The Convention

In order to promote a uniform set of rules, the Convention's scope must be broadly construed. *Tseng* 525 U.S. at 169 (1999) (citation omitted); *see also Floyd v. Eastern Airlines, Inc.,* 872 F.2d 1462, 1467 (11th Cir. 1989), *rev'd on other grounds,* 113 L. Ed. 2d 569, 111 S. Ct. 1489 (1991); *Cf. Choctaw Nation of Indians v. United States,* 318 U.S. 423, 431-32, 63 S. Ct. 672, 677-78, 87 L. Ed. 877 (1943) ("Treaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treat, the negotiations, and the practical construction adopted by the parties."). Under the Convention's broad scope, courts must be cognizant of "artful pleading" and attempts to re-characterize claims, as sounding in state law, in order to circumvent the Convention's provisions. *Tseng,* 525 U.S. at 171 (1999) (internal citation omitted); *see Fields v. BWIA Int'l. Airways,* 2000 U.S. Dist. LEXIS 9397 *13; *Sassouni v Olympic Airways,* 769 F. Supp 537, 540 (S.D.N.Y. 1991).

Reviewing the complaint in a light most favorable to Ms. Burgett, the Court concludes that Article 29 of the Convention applies and preempts her claims. Despite Ms. Burgett's characterization, at their core, her claims seeks compensation for damages to her shipment of dogs. Further, however founded, the alleged damages occurred in the course of Delta's international carriage of goods from Budapest, Hungary to Salt Lake City, Utah, and therefore the

Convention controls. *See Sassouni,* 769 F. Supp. at 540 (S.D.N.Y. 1991) (plaintiff's "attempt to make the claim sound in breach of contract" fails and claim is governed by Convention); *Reiser v Meloi World Travel Serv.,* 1983 U.S. Dist. LEXIS 13886, *8 ; 18 Av. Cas. (CCH) P17208 (S.D.N.Y. Sept. 12, 1983) ("[w]hether plaintiffs' legal claims sound in fraud, . . . , or contract, . . . , there can be no doubt that the claims are covered" by the Convention).

In reaching this determination, the Court considers several of Ms. Burgett's specific challenges: (1) the Convention does not govern Delta's intentional and willful misconduct; (2) the terms of the Convention do not apply to a separate incident; and (3) Delta failed to treat her shipment of dogs as passengers (doc. 15, p. 41).

The court addresses each of these arguments in turn.

### i) Allegations of Willful and Intentional Misconduct Do Not Render The Convention Inapplicable

In reliance upon Article 22(5), Ms. Burgett contends that Delta's willful and intentional actions took it outside the protections of the Convention (doc. 15, p. 28).

Article 22 generally limits a carrier's liability related to destruction loss, damage or delay. *Montreal Convention,* Art. 22(1),(2), and (3).[6] However, pursuant to Article 22(5), the limitations on a carrier's liability do not apply if:

---

[6] Article 22(1) limits damages caused by delay in the carriage of persons, Article 22(2) limits damages caused by destruction, loss, damage or delay in the carriage of baggage, and Article 22(3) limits an air carrier's liability related to destruction, loss, damage or delay in the carriage of cargo. Relevant here is the limitation of liability for the carriage of cargo to a sum of 17 Special Drawing rights per kilogram unless there is a "special declaration of interest in delivery at destination" *Montreal Convention,* Art. 22(3); *see also International Monetary Fund: SDR Valuation,* http://www.imf.org.external/np/fin/data/rms_sdrv.saspx (last visited February 5, 2015); *International Monetary Fund Factsheet: Special Drawing Rights (SDRs),* http://www.imf.org/external/np/ext/facts/pdf/sdr/pdf (last visited Feb. 5, 2015)

> it is proved that the damage resulted from an act or
> omission of the carrier, its servants or agents, done
> with intent to cause damage or recklessly and with
> knowledge that damage would probably result;
> provided that, in the case of such act or omission of
> a servant or agent, it is also proved that such servant
> or agent was acting within the scope of its employment

*Montreal Convention,* Art. 22(5). Ms. Burgett asserts that Delta engaged in willful and intentional misconduct when it fraudulently signed the Air Waybill on her behalf (doc. ¶¶ 72-24), fraudulently represented that it would treat her dogs as "precious cargo" (doc. 5, ¶ 42, ¶58), and intentionally concealed critical facts regarding the conditions and temperatures that the dogs were exposed to (doc. 5, ¶¶38-39, ¶¶48-50). As a result of Delta's intentional acts, Ms. Burgett argues that her claims fall outside the Convention's scope and are not governed by its terms. Upon consideration, the court disagrees.

In *Oneyanusi v. Pan Am,* the appellate court considered plaintiff's claim that the terms of the Warsaw Convention did not apply because the air carrier intentionally provided misinformation about his mother's missing body. 952 F.2d 788, 794 (3rd Cir. 1995) In interpreting Article 25(1)[7]— the Warsaw Convention's correlate to Article 22— the court determined that the Article excused monetary liability limitations for intentional misconduct but did not excuse application of the Convention. *Id.* at 794-795; *see also Stone v. Mexicana Airlines, Inc.,* 610 F.2d 699, 700 (10th Cir. 1979) (allegation of carrier's willful misconduct does not render Convention's statute of limitations period inapplicable).

Similar to *Oneyanusi*, this court finds that Ms. Burgett's reliance upon Article 22(5) is

---

[7]Article 25(1) of the Warsaw Convention states in relevant part: "the carrier shall not be enitlted to avail himself of the provisions of this convention which exclude of limit his liability, if the damage is cause by his willful misconduct. . ."

misplaced. While Article 22 removes limitations on monetary liability for willful and intentional conduct, it does not preclude application of the Convention itself. Additionally, the plain language of the intentional conduct exception does not apply to the carriage of cargo and is specifically limited to the carriage of persons, Article 22(1), and of baggage, Article 22(2). *See Montreal Convention,* Art 22(5) (limiting the intentional conduct exception to " paragraphs 1 [damages related to carriage of persons] and 2 [damages related to the carriage of baggage] of this Article").

### ii) Ms. Burgett's Allegations Do Not Create A Separate Incident

Next, in reliance upon *Ing v American Airlines,* a case involving uncommonly similar circumstances to those before this court, Ms. Burgett asserts that the terms of the Convention do not apply to her claims arising after the dogs reached their destination in Salt Lake City, Utah. 2007 U.S. Dist. LEXIS 11716 (N.D. Cal. Feb. 5, 2007).

In *Ing,* plaintiff shipped his two year old English bulldog, Willie, on an airline flight from New York to San Francisco. *Id.* at *2. Upon arrival, Willie was discovered to be in distress and breathing shallowly. *Id.* at *5. Despite plaintiff's request to rush Willie to a nearby animal hospital, the airline refused his release and Willie died thereafter. *Id.* at *6.[8] In response, plaintiff brought claims against the airline for negligence and breach of contract, and the airline moved for summary judgment arguing limitation of liability pursuant to federal common law. Ultimately, the *Ing* court concluded that federal law did not preempt several of plaintiff's claims since the airline's "conduct after Willie arrived at SFO [San Francisco International Airport]

---

[8]A factual dispute as to Willie's time of death appears to exist as an airline employee testified that Willie was dead upon arrival, while plaintiff testified that Willie was alive when he observed him in the baggage area. *Id*. at * 6.

constituted a separate incident not covered by the waybill." *Id.* *24. Crucial to the court's "separate incident" analysis were the four to five hours that elapsed between the time that plaintiff requested possession of Willie and the time that the dog was delivered, and the fact that Willie was alive upon arrival but denied veterinary care. *Id.* *23.

Ms. Burgett's claims are distinguishable. Unlike the plaintiff in *Ing,* Ms. Burgett does not allege that she was denied access to her dogs. To the contrary, Ms. Burgett asserts that she was immediately taken to the dogs upon their arrival and allowed to observe her deceased adult dog and conduct a thorough examination of the remaining puppies (doc. 5, ¶33). Further, all information provided to Ms. Burgett regarding the dogs' condition was given in conjunction with Delta's delivery of the dogs and is therefore not akin to a "separate incident" resulting from the passage of time or a failure to provide veterinary care. For these reasons, the court concludes that the separate incident analysis does not apply to Ms. Burgett's claims or preclude application of the Convention thereto.

### iii) Dogs Not Considered To Be Passengers

Finally, Ms. Burgett asserts that the Convention's provisions regarding injury to passengers apply to her dogs as opposed to provisions relevant to the carriage of cargo (doc. 15, p. 42)

Upon review, the court declines Ms. Burgett's invitation to characterize her dogs as passengers. Ms. Burgett fails to allege any facts in support thereof, and courts have applied the Convention's provisions relating to the carriage of cargo to shipments of live dogs. *See Aya v. Lan Cargo, S.A.,* 2014 U.S. Dist. LEXIS 134122 *2 (S.D. Fla. Sept. 18, 2014) (dog traveling alone on airplane considered cargo under Montreal Convention).

**2.  Ms. Burgett's Claims Are Precluded By The Convention's Two-Year Suit**

Having concluded that the Montreal Convention applies and has pre-emptive effect over all of Ms. Burgett's claims, the court examines the relevant time period within which a claim for damages must be filed.

Article 35 of the Convention entitled, Limitation of Actions, specifically states:

> The right to damages shall be extinguished if an action is not brought within a period of two years, reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped.

*Montreal Convention,* Art. 35.  Thus, the plain language of Article 35 requires that a claim for damages must be "brought within a period of two years reckoned from the date of arrival at the destination."  *Id.; see e.g. Narayanan v. British Airways*, 747 F.3d 1125, 1128 (9th Cir. 2014) (claim must be brought within two years of the date upon which the aircraft arrived at is destination); *Duay v. Cont'l Airlines, Inc.,* 2010 U.S. Dist. LEXIS 134839 *11 (S.D. Tex. Dec. 21, 2010) ("two year limitations period governs all applicable claims for damages and accrues on the date of a plane's arrival at its destination or the date on which the aircraft ought to have arrived").

In an attempt to avoid application of the two year period, Ms. Burgett argues that the term "action", as stated under Article 35, is ambiguous and cannot be interpreted to require the filing of a "legal action in a court of law" (doc. 15, p. 24).  By way of example, Ms. Burgett directs the court to the many "actions" that she has engaged in within the two year period since the Delta flight's arrival— filing claims, compiling autopsy reports, incurring veterinary bills— as evidence that "there is clearly no time limit set forth as to when a consumer can begin legal

litigation against an airline." (*Id.*, p. 6).

Upon review, the court fails to find ambiguity in the term and concludes that the plain meaning of the term contemplates the filing of a "lawsuit" or legal proceeding. This interpretation is compelled by the context of Article 35, referring to a claimant's right to legal damages, and the standard legal definition of the term itself as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law." *Black's Law Dictionary* 28 (6th ed. 1991). Ms. Burgett's attempt to inject ambiguity where none exists is rejected. *See Unishippers Global Logistics, LLC v. DHL Exp. (USA), Inc.,* 526 Fed. Appx. 899, 905 (10th Cir. 2013) ("words and phrases do not qualify as ambiguous simply because one party seeks to endow them with a different interpretation according to his or her own interests") (internal quotation and citation omitted).

The carriage of Ms. Burgett's dogs stopped when they were delivered to her on April 24, 2008, in Salt Lake City, Utah. Pursuant to Article 35, Ms. Burgett had two years thereafter, until April 24, 2010, within which to file her action. Ms. Burgett, however, did not file her complaint until May 6, 2014— six years after delivery of the dogs.[9] Accordingly, the court concludes that the Convention's two year statute of limitations period applies and time bars Ms. Burgett's claims.

For these reasons, Ms. Burgett's complaint should be dismissed for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).

---

[9]Ms. Burgett filed her motion for leave to proceed *in forma pauperis* in this action on April 24, 2014 (doc. 1).

**II.     Federal And State Statutory Limitations Periods**

In the alternative, assuming Ms. Burgett's claims could somehow be interpreted to fall outside the scope of the Convention, Delta asserts, as second ground for dismissal, that Ms. Burgett's claims are time barred under the applicable federal and state statute of limitation periods.  For the reasons now stated, the Court agrees.

**1.  Federal Limitations Period**

The Airline Deregulation Act ("ADA") of 1978 provides that "a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1).  The United States Supreme Court has interpreted this provision as broadly preempting all actions against air carriers in "connection with or reference to airline 'rates, routes, or services'". *American Airlines v. Wolens,* 513 U.S. 219, 223, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995);[10]  *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383-84, 119 L. Ed. 2d 157, 112 S. Ct. 2031 (1992) (interpreting 49 U.S.C. § 1305(a)(1), the substantively identical, pre 1994 version of the ADA preemption provision); *Manassas Travel, Inc. v. Worldspan, L.P.,* 2008 U.S. Dist. LEXIS 35217 *6 (D. Utah April 30, 2008).

Here, Ms. Burgett asserts that she was never informed that the Montreal Convention would apply to her shipment and, that if she had known, "she would have flown the dogs on two separate Air Way Bills [sic]; one from Hungary to JKF [sic], New York, and then a new bill to

---

[10]In *Wolens,* the Supreme Court carved out an exception to preemption for "routine" contract claims the remedy for which is "confined to the contract's terms [and] simply holds parties to their agreements." 513 U.S. at 229.

fly from JFK to Salt Lake City UT." (doc. 5, ¶106).  First, despite Ms. Burgett's hypothetical claim that she would have flown her dogs under two separate air waybills, she did not do so and her failure to familiarize herself with the terms of the Montreal Convention and Delta's standard contract of carriage does not support a valid cause of action.  Second, even assuming that such was the case and her cargo was treated as a domestic shipment, Ms. Burgett's state claims are preempted by the ADA and under federal law Delta's domestic contract for carriage and tariff Rule G63, requiring that claims be commenced within two years from the acceptance of the shipment for carriage, would govern all others (doc. 8, p.11).  *See Baloise Ins. Co. v. United Airlines, Inc.*, 723 F. Supp 195, 198 (federal common law governs carrier liability and the air waybills apply to claims asserted); *Casas v American Airlines, Inc.,* 304 F.3d 517, 527 (5th Cir. 2002); *Miller v Delta Air Lines, Inc.,* 2012 U.S. Dist. LEXIS 48294 *11 (S.D. Fla. Apr. 5, 2012).  As such, Ms. Burgett's commencement of this action, six years after Delta's acceptance of the shipment at issue for carriage, is untimely.

    **2. State Limitations Period**

In the alternative, even assuming that Ms. Burgett could support claims outside the Convention and federal law, the Court concludes that her state law claims would be time barred by the applicable state statute of limitations periods.

State law claims asserted by a party in federal court are governed by the relevant state statute of limitations periods.  *See Walker v. Armco Steel Corp.,* 446 U.S. 740, 453, 100 S. Ct. 1978, 64 L. Ed. 2d 659 (1980); *Kartiganer v. Juab County,* 2011 U.S. Dist. LEXIS 119520 *5 (D. Utah October 17, 2011).  Under Utah law, the relevant statute of limitations period begins to run from the time that a cause of action accrues.  Utah Code Ann. § 78-12-1; *Retherford v. AT&T*

*Communications,* 844 P.2d 949, 975 (Utah 1992). A cause of action accrues "upon the happening of the last event necessary to complete the cause of action." *Myers v. McDonald*, 635 P.2d 84, 86 (Utah 1981) (citations omitted). "Once a statute has begun to run, a plaintiff must file his or her claim before the limitations period expires or the claim will be barred." *Russell Packard Dev. v. Carson,* 2005 UT 14, ¶20; 103 P.3d 741, 746. Moreover, ignorance as to the existence of a cause of action "will neither prevent the running of the statute of limitations nor excuse a plaintiff's failure to file a claim within the relevant statutory period." *Id.*

Ms. Burgett alleges that she accepted the shipment of her dogs on April 24, 2008 (doc. 5, ¶26, ¶33), and filed a claim with Delta regarding the mishandling on May 6, 2008 (doc. 5, ¶34). Based thereon, the court finds that Ms. Burgett's claims accrued no later than May 6, 2008. Ms. Burgett's complaint against Delta, however, was not filed until May 6, 2014—six years after accrual.

While difficult to discern the exact nature of all of her claims, Ms. Burgett's third cause of action for "Deceptive Advertising Practices" and her fourth cause of action for general violations of consumer protection laws would presumably be barred under Utah's two year statute of limitations period for violations of consumer sales practices. *See* Utah Code Ann. § 13-11-19(8) ("[a]n action under this section shall be brought within two years after occurrence of a violation of this chapter, or within one year after the termination of proceedings by the enforcing authority . . ., whichever is later.").

Additionally, any claims that could be interpreted as sounding in fraud or misrepresentation would be time barred by the applicable three year statute of limitations period for fraud based claims. *See* Utah Code Ann. § 78B-2-305(3) (action to be brought within three

years "for relief on the ground of fraud or mistake"). And, to the extent that Ms. Burgett's claims sound in negligence they are time barred by the catch all four year statute of limitations period. *See* Utah Code Ann. § 78-12-25(3) ("[a]n action may be brought within four years . . . for relief not otherwise provided for by law.");[11] *see DOIT, Inc. v. Touche,* 926 P.2d 835, 842, 1996 Utah LEXIS 66, 296 Utah Adv. 6 (Utah 1996) (explaining that negligence claims are subject to the general four year limitations period). Finally, any contractual claims would be time barred under the contractual two year limitations period set forth in Delta's domestic contract for carriage.

## CONCLUSION

For the above stated reasons, the court concludes that the Montreal Convention applies and preempts Ms. Burgett's federal and state law claims. Under the Convention, Ms. Burgett had two years from the date that her dogs were delivered to her on April 24, 2008, to bring a legal action. Ms. Burgett did not file her complaint until six years later, on May 6, 2014, and consequently her claims are time barred.

In the alternative, if the Montreal Convention does not govern, Ms. Burgett's claims are time barred under the relevant federal and state limitations periods.

## RECOMMENDATION

The court concludes that Ms. Burgett's complaint fails to state claims upon which relief can be granted. Therefore, the court **RECOMMENDS** to the District Court that Delta's Motion To Dismiss be **GRANTED,** and that this case be **DISMISSED WITH PREJUDICE.**

Copies of the foregoing report and recommendation are being mailed to all parties who

---

[11]The 2008 amendment, effective February 7, 2008, made stylistic changes and renumbered this section to Utah Code Ann. §78B-2-307.

are hereby notified of their right to object. Any objection must be filed within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations."). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 10th day of February, 2015.

_____
Dustin Pead
U.S. Federal Magistrate Judge